**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In Re:<br><br>Rancher's Legacy Meat Co.,<br><br>            Debtor. | Case No.: 19-32928-MER<br><br>Chapter 11 |
| Rancher's Legacy Meat Co., as Debtor-in-Possession and the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co.,<br><br>            Plaintiffs,<br><br>    vs.<br><br>James L. Ratcliff and Great Western Bank,<br><br>            Defendants. | Adversary No.: _____ |

**COMPLAINT TO AVOID LIENS, RECOVER AVOIDABLE PAYMENTS AND OBJECT TO CLAIM**

Plaintiffs Rancher's Legacy Meat Co., as Debtor-in-Possession in the above-entitled chapter 11 bankruptcy case ("Rancher's" or "Debtor") and the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co. (the "Committee," and together with the Debtor, "Plaintiffs"), by and through their respective counsel, make the following Complaint against James L. Ratcliff ("Ratcliff") and Great Western Bank ("Great Western," and together with, Ratcliff, "Defendants"):

**JURISDICTION AND VENUE**

    1.    Rancher's filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 20, 2019 (the "Petition Date"). This case (the "Case") is pending in the United States Bankruptcy Court for the District of Minnesota (the "Court").

2. Rancher's is a Debtor-in-Possession pursuant to section 1107 of title 11 of the United States Code (the "Bankruptcy Code") and has all the rights and powers granted to a Debtor-in Possession under the Bankruptcy Code.

3. This adversary proceeding is brought pursuant to sections 544, 547, 548, 550 and 551 of the Bankruptcy Code and seeks: a) a declaratory judgment determining Ratcliff's interest in property of the Debtor's estate, as defined in section 541 of the Bankruptcy Code; b) recovery of preferential payments made to Defendants pursuant to section 547 of the Bankruptcy Code; c) recovery of fraudulent transfers made to Defendants pursuant to sections 544(b) and 548 of the Bankruptcy Code; d) avoidance of Ratcliff's purported lien on Debtor's assets pursuant to section 551 of the Bankruptcy Code; and e) disallowance of any claim that Ratcliff has filed or may file against the Debtor pursuant to section 502 of the Bankruptcy Code.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 17 and 1334 and in accordance with Local Bankruptcy Rule 1070-1.

5. For the avoidance of any doubt, the Debtor gives standing to the Committee to pursue the claims set forth herein.

6. This matter is a core proceeding, and pursuant to 28 U.S.C. sections 1408 and 1409, venue is appropriate in this court.

7. Ratcliff has consented to jurisdiction and venue in this court by voluntarily appearing in and participating in the chapter 11 bankruptcy case.

8. Great Western is a regional bank based in Sioux Falls, South Dakota with over 170 locations in Arizona, Colorado, Iowa, Kansas, Minnesota, Missouri, Nebraska, North Dakota and South Dakota. Great Western does business within the jurisdiction of this Court.

**PARTIES**

9. Rancher's is a Debtor-in-Possession pursuant to section 1107 of the Bankruptcy Code and has all the rights and powers granted to a Debtor-in Possession thereunder.

10. The Committee is a statutory committee appointed in this Case pursuant to section 1102 of the Bankruptcy Code and has all the rights and powers granted to such a committee under the Bankruptcy Code, including, but not limited to, those powers and duties enumerated in section 1103 of the Bankruptcy Code.

11. Ratcliff, upon information and belief, is an adult individual residing in Vinita, Oklahoma.

12. Ratcliff is an insider of the Debtor. As one of the Company's founders, Ratcliff and his designees managed the Debtor and sat on its board of directors. Ratcliff remains the Debtor's landlord and one of its principal creditors. As a result of his unique position, Ratcliff has more knowledge and more control over the Debtor than any other creditor.

13. Upon information and belief, Great Western is a bank based in Sioux Falls, South Dakota, to which Rancher's has made payments for more than six years.

## FACTS

### A. Formation of Unger Meat Company and the Notes

14. This adversary proceeding is brought at the beginning of the Case because Ratcliff purports to be a secured creditor and the Debtor's largest creditor. He contends that he has a security interest in virtually all of the Debtor's assets, and that the Debtor may not use any cash collateral without providing him adequate protection. The Debtor and the Committee contend that Ratcliff is not a secured creditor for the reasons set forth below. Thus, his interests in the Debtor's assets must be determined now to make sure that value is preserved for all creditors and that other parties in interest are treated fairly.

3

15. In 2010, Ratcliff and Joseph Unger started a meat packaging company then known as Unger Meat Company. Ratcliff bought the building to be used for the processing plant and leased it to Unger Meat Company commencing in June 2010.

16. Ratcliff also provided funds to the Debtor as evidenced by two promissory notes between Ratcliff, on one hand, and Unger Meat Company, on the other hand (the "Notes"); one in the principal amount of $11,885,000 at 5% indexed interest rate and one in the principal amount of $2,250,000 at 5.5% indexed interest rate. Both Notes are dated December 3, 2010.

17. Upon information and belief, Ratcliff obtained a personal loan from Great Western in Nebraska (the "Personal Loan") to fund his obligations to the Debtor under the Notes.

18. The Debtor and Great Western are not party to any loan or other agreements with each other.

19. Pursuant to the security agreement dated December 3, 2010 (the "Security Agreement"), Ratcliff asserted a security interest in certain of the Debtor's assets, including:

> …all of Debtor's equipment, including but not limited to the equipment described on Exhibit "1" hereto, inventory, lease agreement, accounts receivable, furniture and fixtures…

*See Security Agreement*, at ¶ 1, Exhibit B to the Motion for Use of Cash Collateral, Docket No. 5 (the "Cash Collateral Motion"). Notably, the Security Agreement does not assert a lien on all of the Debtor's assets, including general intangibles and all other assets not specifically identified. The Notes, Security Agreement and UCC filings (as discussed below) are all attached to the Cash Collateral Motion.

20. On December 20, 2010, Ratcliff purportedly perfected his security interest in Unger Meat Company's assets granted pursuant to the Security Agreement by filing a UCC-1 Financing Statement with the Minnesota Secretary of State (the "2010 UCC-1").

4

21.     On or about January 24, 2011, Ratcliff filed a UCC-3 Financing Statement Amendment with the Minnesota Secretary of State (the "<u>2011 UCC-3</u>").

**B. Unger Meat Company is Sold and Ratcliff's Alleged Security Interest Lapses**

22.     For its first two years, the Company rapidly lost money and in 2012, Ratcliff and Neil Rustin, shareholders of Unger Meat Company, entered into an option agreement (the "<u>Option Agreement</u>") with a holding company named SSJR, LLC ("<u>SSJR</u>").  Pursuant to the Option Agreement, SSJR had the option to purchase the Company for a cash payment of $250,000.00 and the assumption of the Company's debt owed to First National Bank of Vinita, a bank controlled by Ratcliff.

23.     SSJR exercised its option and formally purchased the Company.  In connection therewith, Unger Meat Company changed its name to Rancher's Legacy Meat Co., by amendment to its Articles of Incorporation filed with the Minnesota Secretary of State, on May 6, 2014.

24.     Ratcliff did not file a further UCC statement with the Minnesota Secretary of State until November 12, 2015, on which date he filed a UCC-3 continuation statement (the "<u>2015 UCC-3</u>") with the debtor's name listed as "Unger Meat Company."

25.     On January 10, 2019, Ratcliff filed a UCC-3 amendment with the Minnesota Secretary of State (the "<u>2019 UCC-3</u>") with the debtor listed as "Ranchers Legacy Meat Co."

26.     The Debtor processes fresh meat products and, as a result, its inventory turns over rapidly.  The Debtor's inventory as of September 2014 has been replaced many times and all inventory existing in September 2014 has been sold by the Debtor in the ordinary course of its business.

27. The Debtor's accounts receivable are generally not more than 45 days old and have been replaced many times since 2014 such that there are no accounts receivable currently existing from September of 2014.

**C. The Debtor Made Improper Payments to the Defendants**

28. Starting in 2011, the Debtor, at that time subject to the control of Ratcliff or his designees, paid Ratcliff's Personal Loan directly to Great Western out of the Debtor's operating account. The Debtor never owed any obligations to Great Western and Great Western does not hold any lien on any of the Debtor's assets. During the six years prior to the Petition Date, the Debtor made a $6,156.19 monthly payment to Great Western, for a total of $563,001.00 (the "Great Western Payments").

29. During the 90 days prior to the Petition Date, the total amount the Debtor paid to or for the benefit of Ratcliff was $18,039.00, and during the one year prior to the Petition Date the total amount paid to or for the benefit of Ratcliff was $72,186.56 (the "Preferential Payments" and together with the Great Western Payments, the "Avoidable Payments").

## COUNT ONE – PREFERENTIAL TRANSFERS

**11 U.S.C. §§ 547(b), 550(a), 551, and 1107 -- Preferential Payments**

30. The Debtor and Committee re-allege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

31. The Preferential Payments were made by the Debtor to or for the benefit of Ratcliff.

32. The Preferential Payments were made by the Debtor on account of an antecedent debt owed before such transfers were made.

33. The Preferential Payments were made while the Debtor was insolvent.

6

34. The Preferential Payments were made within one year before the date of the filing of the petition commencing the Case.

35. The Preferential Payments enabled Ratcliff to receive more than he would have received if the Case was a case under Chapter 7 of the Bankruptcy Code, the Preferential Payments had not been made, and received payment to the extent provided by the provisions of the Bankruptcy Code.

36. As a result of the foregoing, the Debtor is entitled to judgment pursuant to sections 547(b), 550(a), 551, and 1107 of the Bankruptcy Code: (a) avoiding and recovering the Preferential Payments free and clear of any claimed interest of the Defendants; (b) directing that the Preferential Payments be set aside; (c) recovering such Preferential Payments or the value thereof from Ratcliff for the benefit of the Debtor's bankruptcy estate; and (d) recovering attorneys' fees from Ratcliff.

## COUNT TWO -- FRAUDULENT TRANSFERS

**Constructive Fraud -- 11 U.S.C. §§ 548(a)(1)(B), 550(a), 551, and 1107 -- Avoidable Payments**

37. The Debtor and Committee re-allege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

38. At all times material hereto, the Debtor: (a) was insolvent on the dates the Avoidable Payments were made or became insolvent as a result of the Avoidable Payments; and/or (b) was engaged in business or transactions, or was about to engage in businesses or transactions, for which the property remaining with the Debtor after the Avoidable Payments were effectuated constituted unreasonably small capital; and/or (c) at the time of the Avoidable Payments, intended to incur, or believed that it would incur, debts that would be beyond its ability to pay the debts matured.

39. The Debtor received less than a reasonably equivalent value in exchange for the Avoidable Payments.

40. As a result of the foregoing, the Debtor is entitled to judgment pursuant to Bankruptcy Code §§ 548(a), 550(a), 551, and 1107: (a) avoiding and preserving the Avoidable Payments free and clear from any claimed interest of the Defendants; (b) directing that the Avoidable Payments be set aside; (c) recovering such Avoidable Payments or the value thereof from the Defendants for the benefit of the Debtor's bankruptcy estate; and (d) recovering attorneys' fees from the Defendants.

## COUNT THREE -- FRAUDULENT TRANSFERS

**Constructive Fraud -- 11 U.S.C. §§ 544(b), 550(a), 551, and 1106 & Minn. Stat. § 513.41 *et seq.* or Other Governing Fraudulent Transfer Laws -- Avoidable Payments**

41. The Debtor and Committee re-allege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

42. At all times material hereto, there was and is at least one or more creditors who held and who continue to hold unsecured claims against the Debtor that were or are allowable under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code § 502(e). The Avoidable Payments are avoidable under applicable non-bankruptcy law by a creditor holding an unsecured claim in the Bankruptcy Case.

43. At all times material hereto, the Debtor: (a) was insolvent on the dates the Avoidable Payments were made or became insolvent as a result of the Avoidable Payments; and/or (b) was engaged in businesses or transactions, or was about to engage in businesses or transactions, for which the property remaining with the Debtor after the Avoidable Payments were effectuated constituted unreasonably small capital; and/or (c) at the time of the Avoidable

Payments, intended to occur, or believed that it would incur, debts that would be beyond its ability to pay as the debts matured.

44. The Debtor received less than a reasonably equivalent value in exchange for the Avoidable Payments.

45. As a result of the foregoing, the Debtor is entitled to judgment pursuant to sections 544(b), 550(a), 551, and 1107 of the Bankruptcy Code, Minn. Stat. § 513.41 *et seq.,* and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states: (a) avoiding and preserving the Avoidable Payments free and clear from any claimed interest of the Defendants; (b) directing that the Avoidable Payments be set aside; (c) recovering such Avoidable Payments or the value thereof from the Defendants for the benefit of the Debtor's bankruptcy estate; and (d) recovering attorneys' fees from the Defendants.

## COUNT FOUR – AVOIDING SECURITY INTERESTS
### Unperfected Liens – 11 U.S.C. §§ 544, 550, and 551

46. The Debtor and Committee re-allege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

47. The Debtor, as debtor in possession, has the rights and powers of, or may avoid any transfer of the property of the debtor that is voidable by, a creditor which has obtained a judicial lien.

48. On May 6, 2014, the Debtor changed its name from Unger Meat Company to Rancher's Legacy Meat Co (the "Name Change").

49. Pursuant to Minn. Stat. § 336.9-506, a financing statement is "seriously misleading" if it fails to provide the name of the debtor as stated in the public records.

9

1215909 v1

50. Pursuant to Minn. Stat. § 336.9-507, upon the expiration of the four month period following the Name Change, or September 6, 2014, Ratcliff's security interest in inventory, accounts, and equipment became unperfected because Ratcliff did not file a UCC-3 reflecting the Name Change, thus rendering the 2010 UCC-1 and the 2011 UCC-3 "seriously misleading." In order to re-perfect his security interest, Ratcliff was required to file a new UCC-1 pursuant to Minn. Stat. § 336.9-310, but he failed to do so.

51. A creditor who obtains a judicial lien on the inventory, accounts, and equipment acquired by the Debtor has priority over the unperfected security interest of Ratcliff.

52. As a result of the foregoing, the Debtor is entitled to judgment pursuant to sections 544(b), 550(a), and 551 of the Bankruptcy Code that the Debtor's interest in its assets is entitled to priority over Ratcliff's unperfected security interests.

53. Accordingly, the Debtor is entitled to an order: (a) avoiding and preserving the purportedly liens held by Ratcliff free and clear from any claimed interest of Ratcliff; (b) directing that the liens be set aside; (c) recovering such liens or the value thereof for the benefit of the Debtor's bankruptcy estate; and (d) recovering attorneys' fees from Ratcliff.

## COUNT FIVE -- DISALLOWANCE OF CLAIM
### 11 U.S.C. § 502(b) and (d)

54. The Debtor and Committee re-allege and incorporate by reference the preceding paragraphs of the Complaint as if fully set forth herein.

55. Ratcliff has the right to file a proof of claim in this Bankruptcy Case.

56. To the extent Ratcliff asserts he is entitled to any claim in this Bankruptcy Case, such claims are unenforceable against the Debtor's estate or the property of the Debtor under any agreement or applicable law and should be disallowed under section 502(b) of the Bankruptcy Code.

57. Further, any claim of an entity from which property is recoverable under section 550 of the Bankruptcy Code or held by a transferee of a transfer that is avoided under sections 544, 547, or 548 of the Bankruptcy Code shall be disallowed by the Court unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable.

58. As a result of the foregoing, to the extent Ratcliff asserts he is entitled to any claim in the Bankruptcy Case, such claims should be disallowed.

**WHEREFORE**, the Plaintiffs, Debtor and Committee, request that this court enter judgment in their favor:

a. Determining the lien of Ratcliff in all of the Debtor's assets is unperfected;

b. Pursuant to 11 U.S.C §§ 544(b), 550, 551 avoiding the unperfected lien of the Defendant Ratcliff and preserving that lien for the benefit of the estate.

c. Pursuant to 11 U.S.C §§ 544(b), 550, and 551, avoiding and preserving the Avoidable Payments free and clear from any claimed interest of the Defendants, directing that the Avoidable Payments be set aside, and recovering such Avoidable Payments or the value thereof from the Defendants for the benefit of the Debtor's estate;

d. Pursuant to 11 U.S.C. §§ 544(b), 550, 551, and 1107, Minn. Stat. § 513.41 *et seq.*, avoiding and preserving the Avoidable Payments free and clear from any claimed interest of the Defendants, directing that the Avoidable Payments be set aside, and recovering such Avoidable Payments or the value thereof from the Defendants for the benefit of the Debtor's bankruptcy estate;

e. Pursuant to 11 U.S.C. §§ 547(b), 550(a), 551, and 1107: (1) avoiding and preserving the Preferential Payments free and clear of any claimed interest of the Defendants, (2) directing that the Preferential Payments be set aside, and (3) recovering such Preferential Payments or the value thereof from the Defendants for the benefit of the Debtor's bankruptcy estate;

f. Pursuant to 11 U.S.C. § 502(b) and (d): declaring and ordering that, to the extent asserts he is entitled to any claim in the Bankruptcy Case, as well as any other claims that may be asserted by Ratcliff, such claims are disallowed;

g. Awarding Plaintiffs' attorneys' fees, costs and expenses from the Defendants; and,

1215909 v1

 h. For such other and further relief as the Court may determine just and equitable, including but not limited to, all attorney's fees and costs incurred by the Debtor and the Committee.

Respectfully submitted,

**FOLEY & MANSFIELD, PLLP**

Dated: October 15, 2019 By: */s/ Cameron A. Lallier*
Thomas J. Lallier (#163041)
Cameron A. Lallier (#393213)
250 Marquette Avenue, Suite 1200
Minneapolis, MN 55401
tlallier@foleymansfield.com
clallier@foleymansfield.com
Telephone: (612) 338-8788

***ATTORNEYS FOR THE DEBTOR***

and

**PACHULSKI STANG ZIEHL & JONES LLP**

Dated: October 15, 2019 By: */s/ Bradford J. Sandler*
Bradford J. Sandler (*admitted pro hac vice*)
Colin R. Robinson (*admitted pro hac vice*)
Steven W. Golden (*admitted pro hac vice*)
919 North Market Street, 17th Floor
Wilmington, DE 19801
bsandler@pszjlaw.com
crobinson@pszjlaw.com
sgolden@pszjlaw.com
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

and

Jeffrey D. Klobucar (#0389368)
**BASSFORD REMELE, P.A.**
100 South Fifth Street, Suite 1500
Minneapolis, MN 55402
jklobucar@bassford.com
Telephone: (612) 333-3000
Facsimile: (612) 333-8829

12

1215909 v1

*COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS*