**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In Re:<br><br>Rancher's Legacy Meat Co.,<br><br>Debtor. | Case No.: 19-32928-MER<br><br>Chapter 11 |
| Rancher's Legacy Meat Co., as Debtor-in-Possession and the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co.,<br><br>Plaintiffs,<br><br>vs.<br><br>James L. Ratcliff and Great Western Bank,<br><br>Defendants. | Adversary No.: 19-3095-MER |

**NOTICE OF HEARING ON MOTION AND PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING COUNT FOUR OF THE COMPLAINT**

1.     Plaintiffs Rancher's Legacy Meat Co., as Debtor-in-Possession ("Rancher's") and

the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co. (the

"Committee") (collectively, the "Movants"), by and through their respective undersigned

attorneys, move the Court for the relief requested below, and give notice of hearing herewith.

2.     The Court will hold a hearing on this motion at **9:30 a.m. on February 12, 2020**,

before the Honorable Michael E. Ridgway in Courtroom 7W at the United States Courthouse,

300 South Fourth Street, Minneapolis, Minnesota, or as soon thereafter as counsel may be heard.

3.     Pursuant to Local Rule 7056-1, any response to this motion must be filed and

served by delivery not later than **January 29, 2020**, which is fourteen days before the time set

for the hearing (including Saturdays, Sundays and holidays). Any reply brief must be filed and

served by delivery not later than **February 5, 2020**. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.      This motion is filed pursuant to Bankruptcy Rules 7056 and Local Rule 7056-1; Movants that the Court enter summary judgment in their favor, and against Defendant James L. Ratcliff ("Ratcliff"), on Count Four of their Complaint filed on October 15, 2019 (the "Complaint") [ECF #1].

5.      Count Four of the Complaint seeks to avoid the lien purportedly held by Ratcliff because it was not properly perfected and to recover the value of that lien for the benefit of the Debtor's bankruptcy estate.

6.      Rancher's filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 20, 2019 (the "Petition Date"). This case (the "Case") is pending in the United States Bankruptcy Court for the District of Minnesota (the "Court").

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 17 and 1334 and in accordance with Local Bankruptcy Rule 1070-1.

8.      This matter is a core proceeding, and pursuant to 28 U.S.C. sections 1408 and 1409, venue is appropriate in this court.

9.      The underlying facts necessary to resolve Count Four of the Complaint are not in dispute.

10.      The formation of the Promissory Notes, execution of a Security Agreement and efforts undertaken by Ratcliff to attempt to perfect his security interest are agreed upon [*Compare*, Complaint at ECF # 1 and Ratcliff's Amended Answer (the "Answer") at ECF #14].

2

11.     The only issue in dispute between the Plaintiffs and Ratcliff is what the legal

significance of those underlying facts is as it relates to perfection, or lack thereof, of Ratcliff's

asserted lien.

12.     Plaintiffs admit Ratcliff obtained a security interest in substantially all of the

assets of Unger Meat Company (now Rancher's Legacy Meat Co.).

13.     However, that security interest lapsed on or about September 9, 2014, pursuant to

the provisions of the Uniform Commercial Code, as adopted in Minnesota, specifically Minn.

Stat. section 336.9-507.

14.     Pursuant to the Uniform Commercial Code, when Unger Meat Company became

Rancher's Legacy Meat Co. on May 9, 2014, its name change caused the name of the debtor

listed in Ratcliff's UCC-1 to become seriously misleading pursuant to the provisions of Minn.

Stat. section 336.9-506.

15.     As such, Ratcliff remained perfected by his financing statement for a period of

four months (i.e., through September 9, 2014).  However, after September 9, 2014, Ratcliff's

financing statement ceased to be effective to perfect his security interest in collateral acquired by

the Debtor. *See*, Minn. Stat. § 336.9-507(c)(2).

**WHEREFORE**, the Movants respectfully request that the Court enter summary

judgment in their favor, and against Ratcliff, on Count Four of the Complaint determining the

lien of Ratcliff in all of the Debtor's assets is unperfected and pursuant to 11 U.S.C §§ 544(b),

550, 551 avoiding the unperfected lien of Ratcliff and preserving that lien for the benefit of the

estate.

3

Respectfully submitted,

**FOLEY & MANSFIELD, PLLP**

Dated: January 15, 2020          By:  */s/ Cameron A. Lallier*
Thomas J. Lallier (#163041)
Cameron A. Lallier (#393213)
250 Marquette Avenue, Suite 1200
Minneapolis, MN  55401
clallier@foleymansfield.com
Telephone:  (612) 338-8788

**ATTORNEYS FOR THE DEBTOR**

and

**PACHULSKI STANG ZIEHL & JONES LLP**

Dated: January 15, 2020          By:  */s/ Bradford J. Sandler*
Bradford J. Sandler (*admitted pro hac vice*)
Colin R. Robinson (*admitted pro hac vice*)
Steven W. Golden (*admitted pro hac vice*)
919 North Market Street, 17th Floor
Wilmington, DE 19801
bsandler@pszjlaw.com
Telephone:  (302) 652-4100

and

Jeffrey D. Klobucar (#0389368)
**BASSFORD REMELE, P.A.**
100 South Fifth Street, Suite 1500
Minneapolis, MN 55402
jklobucar@bassford.com
Telephone: (612) 333-3000

**COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS**

1316733 v1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Case No.:  19-32928-MER |
| Rancher's Legacy Meat Co., | Chapter 11 |
| Debtor. | |
| Rancher's Legacy Meat Co., as Debtor-in-Possession and the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co., | |
| Plaintiffs, | |
| vs. | Adversary No.:  19-3095-MER |
| James L. Ratcliff and Great Western Bank, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING COUNT FOUR OF THE COMPLAINT

## INTRODUCTION

The Plaintiffs in this proceeding request that the Court enter summary judgment in their favor, and against Defendant James L. Ratcliff ("Ratcliff"), on Count Four of their Complaint filed on October 15, 2019 (the "Complaint") [ECF #1]. Count Four of the Complaint seeks to avoid the lien purportedly held by Ratcliff because it was not properly perfected and to recover the value of that lien for the benefit of the Debtor's bankruptcy estate.

The underlying facts necessary to resolve Count Four of the Complaint are not in dispute. The formation of the Promissory Notes, execution of a Security Agreement and efforts undertaken by Ratcliff to attempt to perfect his security interest are agreed upon [*Compare*, Complaint at ECF # 1 and Ratcliff's Amended Answer (the "Answer") at ECF #14]. The only

1316733 v1

issue in dispute between the Plaintiffs and Ratcliff is what the legal significance of those underlying facts is as it relates to perfection, or lack thereof, of Ratcliff's asserted lien.

Plaintiffs admit Ratcliff obtained a security interest in substantially all of the assets of Unger Meat Company (now Rancher's Legacy Meat Co.). However, that security interest lapsed on or about September 9, 2014, pursuant to the provisions of the Uniform Commercial Code, as adopted in Minnesota, specifically Minn. Stat. section 336.9-507. Pursuant to the Uniform Commercial Code, when Unger Meat Company became Rancher's Legacy Meat Co. on May 9, 2014, its name change caused the name of the debtor listed in Ratcliff's UCC-1 to become seriously misleading pursuant to the provisions of Minn. Stat. section 336.9-506. As such, Ratcliff remained perfected by his financing statement for a period of four months (i.e., through September 9, 2014). However, after September 9, 2014, Ratcliff's financing statement ceased to be effective to perfect his security interest in collateral acquired by the Debtor. *See*, Minn. Stat. § 336.9-507(c)(2).

For these reasons, as more fully set forth below, Plaintiffs' request this Court grant their Motion for Summary Judgment as to Count Four of the Complaint (the "Motion").

## **THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT**

Based on Ratcliff's Answer and on those documents specifically identified below, there is no genuine dispute as to any material fact concerning the Motion:

1.      Rancher's Legacy Meat Co. filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 20, 2019 (the "Petition Date"). *Compare* Complaint ¶1 *with* Answer ¶2.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 17 and 1334 and in accordance with Local Bankruptcy Rule 1070-1. *Compare* Complaint ¶4 *with* Answer ¶8.

2

3.      This matter is a core proceeding, and pursuant to 28 U.S.C. sections 1408 and

1409, venue is appropriate in this court. *Compare* Complaint ¶6 *with* Answer ¶2.

4.      In 2010, Ratcliff and Joseph Unger started a meat packaging company then

known as Unger Meat Company. Ratcliff bought the building to be used for the processing plant

and leased it to Unger Meat Company commencing in June 2010. *Compare* Complaint ¶15 *with*

Answer ¶2.

5.      Ratcliff also provided funds to the Debtor as evidenced by two promissory notes

between Ratcliff, on one hand, and Unger Meat Company, on the other hand (the "Notes"); one

in the principal amount of $11,885,000 at 5% indexed interest rate and one in the principal

amount of $2,250,000 at 5.5% indexed interest rate. Both Notes are dated December 3, 2010.

*Compare* Complaint ¶16 *with* Answer ¶2. True and correct copies of the Notes are attached to

the Declaration of Arlyn J. Lomen ("Lomen Decl."), submitted contemporaneously herewith, as

**Exhibit A**.

6.      Pursuant to the security agreement dated December 3, 2010 (the "Security

Agreement"), Ratcliff asserted a security interest in certain of the Debtor's assets, including:

> …all of Debtor's equipment, including but not limited to the
> equipment described on Exhibit "1" hereto, inventory, lease
> agreement, accounts receivable, furniture and fixtures…

*See* Security Agreement ¶ 1. Lomen Decl. at ¶ 3 and **Exhibit B**. Notably, the Security

Agreement does not assert a lien on all of the Debtor's assets, including general intangibles and

all other assets not specifically identified. *Compare* Complaint ¶19 *with* Answer ¶14.

7.      On December 29, 2010, Ratcliff purportedly perfected his security interest in

Unger Meat Company's assets granted pursuant to the Security Agreement by filing a UCC-1

Financing Statement with the Minnesota Secretary of State (the "2010 UCC-1"). *Compare*

Complaint ¶20 *with* Answer ¶15. Lomen Decl. at ¶ 4 and **Exhibit C**.

3

8.      On or about January 24, 2011, Ratcliff filed a UCC-3 Financing Statement

Amendment with the Minnesota Secretary of State (the "2011 UCC-3").  *Compare* Complaint

¶21 *with* Answer ¶ 2.  Lomen Decl. at ¶ 5 and **Exhibit D**.

9.      For its first two years, the Company rapidly lost money and in 2012, Ratcliff and

Neil Rustin, shareholders of Unger Meat Company, entered into an option agreement (the

"Option Agreement") with a holding company named SSJR, LLC ("SSJR").  Pursuant to the

Option Agreement, SSJR had the option to purchase the Company for a cash payment of

$250,000.00 and the assumption of the Company's debt owed to First National Bank of Vinita, a

bank controlled by Ratcliff.  *Compare* Complaint ¶22 *with* Answer ¶16.

10.      SSJR exercised its option and formally purchased the Company.  In connection

therewith, Unger Meat Company changed its name to Rancher's Legacy Meat Co., by

amendment to its Articles of Incorporation filed with the Minnesota Secretary of State, on May

6, 2014.  *Compare* Complaint ¶23 *with* Answer ¶16. Lomen Decl. at ¶ 6.

11.      Ratcliff did not file a further UCC statement with the Minnesota Secretary of

State until November 12, 2015, on which date he filed a UCC-3 continuation statement (the

"2015 UCC-3") with the debtor's name listed as "Unger Meat Company."  *Compare* Complaint

¶24 *with* Answer ¶17.  Lomen Decl. at ¶ 7 and **Exhibit E**.

12.      On January 10, 2019, Ratcliff filed a UCC-3 amendment with the Minnesota

Secretary of State (the "2019 UCC-3") with the debtor listed as "Ranchers Legacy Meat Co."

*Compare* Complaint ¶25 *with* Answer ¶18.  Lomen Decl. at ¶ 8 and **Exhibit F**.

13.      The Debtor's inventory consists of raw ingredients (beef, pork and other species),

finished products, and packaging supplies.  Raw ingredients may be fresh in nature or frozen.  If

fresh, it has a very limited shelf life while if it's in the frozen state, the shelf life is generally up

to one year, but may be extended to beyond that timeframe if the product is handled

appropriately.  Frozen product with more than 24 months of age may still be edible, but its value

would be greatly diminished.  Packaging supplies may have an extended life, but generally have

limited value if extended beyond 2 to 3 years simply because labeling requirements change and

evolve over time.  The oldest items in the Debtor's inventory were purchased in 2016.  Lomen

Decl. at ¶ 9.

14.    The Debtor's accounts receivable are generally not more than 45 days old and

have been replaced many times since 2014 such that there are no accounts receivable currently

existing from September of 2014.  Lomen Decl. at ¶ 10 and **Exhibit G**.

## ARGUMENT

### I)    Ratcliff Does Not Have a Perfected Security Interest in Rancher's Assets Acquired on or After September 9, 2014.

The following facts are undisputed as it relates to Ratcliff's asserted security interest in

Rancher's assets: (i) Unger Meat Company executed and delivered to Ratcliff a Security

Agreement dated December 3, 2010, by which Unger Meat Company pledged and granted

Ratcliff a security interest in its ownership interest in all of Unger's equipment, inventory, lease

agreements, accounts receivable, furniture and fixtures, whether then owned or thereafter

acquired, together with all proceeds and products thereof and replacements therefor; (ii) Unger

Meat Company changed its name to Rancher's Legacy Meat Co. by amendment to its Articles of

Incorporation on May 6, 2014; (iii) Ratcliff filed a UCC continuation statement on November 12,

2015, with the debtor listed as "Unger Meat Company"; and (iv) Ratcliff did not file a debtor

name change to reflect the change in his debtor's name to Rancher's Legacy Meat Co. until

January 10, 2019.

The Uniform Commercial Code's provisions governing this particular issue were changed significantly in 2010.  Previously, the Uniform Commercial Code, in section 9-402, required financing statements to contain the name, address, and signature of the debtor.  It did not define what constituted the name.  Since the 2010 revisions, the definition of what constitutes a sufficient name on the financing statement is specified and 9-506 specifies that an erroneous name is seriously misleading unless the financing statement is saved by the safe harbor provision.  The revised provisions of the Uniform Commercial Code, as adopted in Minnesota, provide as follows:

**336.9-503 NAME OF DEBTOR AND SECURED PARTY**.

(a) Sufficiency of debtor's name. A financing statement sufficiently provides the name of the debtor:

> (1) except as otherwise provided in paragraph (3), if the debtor is a registered organization or the collateral is held in a trust that is a registered organization, only if the financing statement provides ***the name that is stated to be the registered organization's name*** on the public organic record most recently filed with or issued or enacted by the registered organization's jurisdiction of organization which purports to state, amend, or restate the registered organization's name;

 (b) Additional debtor-related information. A financing statement that provides the name of the debtor in accordance with subsection (a) is not rendered ineffective by the absence of:

> (1) a trade name or other name of the debtor; or

> (2) unless required under subsection (a)(6)(B), names of partners, members, associates, or other persons comprising the debtor.

(c) Debtor's trade name insufficient. A financing statement that provides only the debtor's trade name does not sufficiently provide the name of the debtor.

**336.9-506 EFFECT OF ERRORS OR OMISSIONS**.

(a) Minor errors and omissions. A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

6

(b) Financing statement seriously misleading. Except as otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with section 336.9-503(a) is seriously misleading.

(c) Financing statement not seriously misleading. ***If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement*** that fails sufficiently to provide the name of the debtor in accordance with section 336.9-503(a), the name provided does not make the financing statement seriously misleading.

(d) Debtor's correct name. For purposes of section 336.9-508(b), the "debtor's correct name" in subsection (c) means the correct name of the new debtor.

**336.9-507 EFFECT OF CERTAIN EVENTS ON EFFECTIVENESS OF FINANCING STATEMENT**.

(a) Disposition. A filed financing statement remains effective with respect to collateral that is sold, exchanged, leased, licensed, or otherwise disposed of and in which a security interest or agricultural lien continues, even if the secured party knows of or consents to the disposition.

(b) Information becoming seriously misleading. Except as otherwise provided in subsection (c) and section 336.9-508, a financing statement is not rendered ineffective if, after the financing statement is filed, the information provided in the financing statement becomes seriously misleading under section 336.9-506.

(c) ***Change in debtor's name***. If the name that a filed financing statement provides for a debtor becomes insufficient as the name of the debtor under section 336.9-503 (a) so that the financing statement becomes seriously misleading under section 336.9-506:

> (1) the financing statement is effective to perfect a security interest in collateral acquired by the debtor before, or ***within four months after***, the filed financing statement becomes seriously misleading; and

> (2) the financing statement is ***not effective*** to perfect a security interest in collateral acquired by the debtor more than four months after the filed financing statement becomes seriously misleading, unless an amendment to the financing statement which renders the financing statement not seriously misleading is filed within four months after the financing statement became seriously misleading.

Minn. Stat. §§ 336.9-503, 506 and 507 (***emphasis added***).

Case law analyzing the 2010 revisions to the Uniform Commercial Code remains in its

infancy. However, at least one appellate court within the Eighth Circuit has addressed the issue.

*See*, *In re EDM Corp.*, 431 B.R. 459 (B.A.P. 8th Cir. 2010). After conducting a thorough

analysis of the applicable provisions of the Uniform Commercial Code and prior Eighth Circuit

decisions, the *EDM Corp*. court concluded,

> In sum, we interpret § 9–503 to mean exactly what it says: if the
> debtor is a registered organization, then a financing statement
> "provides the name of the debtor" only if it "provides the name of
> the debtor indicated on the public record of the debtor's jurisdiction
> of organization"—***nothing more and nothing less.***

*Id*. at 466 (***emphasis added***).

It is worth noting that the *EDM Corp*. court found the secured lender was not validly

perfected even though its UCC financing statement included the debtor's organizational name.

The mere inclusion of a d/b/a name in addition to the debtor's organizational name was enough

to negate perfection of the secured lender's asserted security interest. By comparison, here,

Ratcliff filed his continuation statement in November 2015 under the completely wrong debtor's

name. No UCC search for Rancher's Legacy Meat Co. would have revealed the financing

statement that Ratcliff  now seeks to enforce as a valid, perfected, first priority lien on Rancher's

assets.

On May 6, 2014, Unger Meat Company became Rancher's Legacy Meat Co.   Ratcliff

was aware of the change of name.  When the name of the debtor on his security interest changed,

Ratcliff was required to file an amendment within four months reflecting the name change to

maintain perfection.  Ratcliff did not file a change of name amendment until January 10, 2019,

more than four years after his perfection had lapsed.

8

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request this Court grant their Motion, avoid the lien asserted by Defendant James L. Ratcliff, and preserve that lien for the benefit of the estate pursuant to 11 U.S.C. sections 554(b), 550 and 551.

Respectfully submitted,

**FOLEY & MANSFIELD, PLLP**

Dated: January 15, 2020          By:   */s/ Cameron A. Lallier*
                                  Thomas J. Lallier (#163041)
                                  Cameron A. Lallier (#393213)
                                  250 Marquette Avenue, Suite 1200
                                  Minneapolis, MN  55401
                                  clallier@foleymansfield.com
                                  Telephone:  (612) 338-8788

*ATTORNEYS FOR THE DEBTOR*

and

**PACHULSKI STANG ZIEHL & JONES LLP**

Dated: January 15, 2020          By:   */s/ Bradford J. Sandler*
                                  Bradford J. Sandler (*admitted pro hac vice*)
                                  Colin R. Robinson (*admitted pro hac vice*)
                                  Steven W. Golden (*admitted pro hac vice*)
                                  919 North Market Street, 17th Floor
                                  Wilmington, DE 19801
                                  bsandler@pszjlaw.com
                                  Telephone:  (302) 652-4100

and

Jeffrey D. Klobucar (#0389368)
**BASSFORD REMELE, P.A.**
100 South Fifth Street, Suite 1500
Minneapolis, MN 55402
jklobucar@bassford.com
Telephone: (612) 333-3000

*COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS*

9

1316733 v1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In Re: | Case No.:  19-32928-MER |
| Rancher's Legacy Meat Co., | Chapter 11 |
| Debtor. | |
| Rancher's Legacy Meat Co., as Debtor-in-Possession and the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co., | |
| Plaintiffs, | Adversary No.:  19-3095-MER |
| vs. | |
| James L. Ratcliff and Great Western Bank, | |
| Defendants. | |

**UNSWORN DECLARATION OF ARLYN J. LOMEN IN SUPPORT OF PLAINTIFFS'**
**PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING COUNT FOUR OF**
**THE COMPLAINT**

Arlyn J. Lomen, under penalty of perjury, states as follows:

I am the President of Rancher's Legacy Meat. Co. ("Rancher's" or "Debtor"). I make this unsworn declaration in support of the Plaintiffs' Partial Motion for Summary Judgment Regarding Count Four of the Complaint.

1.      I am familiar with the books and records of Rancher's as well as with Rancher's assets, debts and operations.

2.      Rancher's executed two promissory notes, each dated December 3, 2010, in favor of Defendant James L. Ratcliff ("Ratcliff") in the amounts of $11,885,000.00 and $2,250,000.00,

respectively. Attached hereto as **Exhibit A** are true and correct copies of the two promissory

notes (the "Notes").

3.        Rancher's executed a Security Agreement in favor of Ratcliff on December 3,

2010 (the "Security Agreement").  The Security Agreement granted Ratcliff a lien in

substantially all of the Rancher's assets. A true and correct copy of the Security Agreement is

attached as **Exhibit B**.

4.        On December 29, 2010, Ratcliff purportedly perfected his security interest in

Debtor's assets granted pursuant to the Security Agreement by filing a UCC-1 Financing

Statement with the Minnesota Secretary of State (the "2010 UCC-1").  as Document No.

201022606390. A true and correct copy of the 2010 UCC-1 is attached hereto as **Exhibit C**.

5.        On or about January 24, 2011, Ratcliff filed a UCC-3 Financing Statement

Amendment with the Minnesota Secretary of State (the "2011 UCC-3") as Document No.

20112290995. A true and correct copy of the 2011 UCC-3 is attached hereto as **Exhibit D**.

6.        Unger Meat Company changed its name to Rancher's Legacy Meat Co. by

amendment to its Articles of Incorporation on May 6, 2014.

7.        Ratcliff did not file a further UCC statement with the Minnesota Secretary of

State until November 12, 2015, on which date he filed a UCC-3 continuation statement (the

"2015 UCC-3") as Document No. 854026600022, with the debtor's name listed as "Unger Meat

Company." A true and correct copy of the 2015 UCC-3 is attached hereto as **Exhibit E**.

8.        On January 10, 2019, Ratcliff filed a UCC-3 amendment with the Minnesota

Secretary of State (the "2019 UCC-3") as Document No. 854026600022, with the debtor listed

as "Ranchers Legacy Meat Co."  A true and correct copy of the 2019 UCC-3 is attached hereto

as **Exhibit F**.

2

1316462 v1

9.    The Debtor's inventory consists of raw ingredients (beef, pork and other species), finished products, and packaging supplies. Raw ingredients may be fresh in nature or frozen. If fresh, it has a very limited shelf life while if it's in the frozen state, the shelf life is generally up to one year, but may be extended to beyond that timeframe if the product is handled appropriately. Frozen product with more than 24 months of age may still be edible, but its value would be greatly diminished. Packaging supplies may have an extended life, but generally have limited value if extended beyond 2 to 3 years simply because labeling requirements change and evolve over time. The oldest items in the Debtor's inventory were purchased in 2016.

10.    The Debtor's accounts receivable are generally not more than 45 days old and have been replaced many times since 2014 such that there are no accounts receivable currently existing from September of 2014. An analysis of Debtor's current accounts receivable aging is attached hereto as **Exhibit G**.

11.    I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated: January ___, 2020

_____
Arlyn J. Lomen, President

3

# PROMISSORY NOTE

$11,885,000                                                    4301 White Bear Parkway
5% (Indexed)                                                  Vadnais Heights, MN 55110
                                                              December 3, 2010

FOR VALUE RECEIVED, Unger Meat Company, a Minnesota corporation ("Maker"),
promises to pay to the order of James L. Ratcliff ("Holder"), at the address of 24631 South Hwy. 2,
Vinita, Oklahoma, 74301, or at such other place as the Holder may designate and notify the
undersigned, in lawful money of the United States, and in immediately available funds, the principal
sum of $11,885,000, together with interest at the initial rate of five percent (5%) per annum.

1.    Principal payments on this Promissory Note shall be deferred for eighteen (18)
months from the date hereof. During said eighteen-month period, interest shall be payable in
eighteen (18) monthly installments. The first monthly installment shall be $49,512.85 commencing
on January 3, 2011. The final installment of interest only will be due on June 3, 2012. Interest rates
and payment amounts shall be subject to adjustment as provided below.

2.    Monthly principal and interest payments on this Promissory Note shall commence
becoming due and payable commencing nineteen (19) months after the date hereof, the first such
payment of principal and interest in the sum of $94,006.83 (subject to index adjustment as set forth
below) will be due and owing on July 3, 2012, with successive installments in said amount being due
on the first day of each month thereafter until July 3, 2017, at which time the entire unpaid balance
of principal and interest shall be due and payable in full.

3.    The interest rate on all sums owing under the terms of this Promissory Note shall be
adjusted in the same manner and upon the same effective dates as provided by the Loan Application

Page 1

**Exhibit A**

and Debt Modification Agreement by and between James L. Ratcliff and James N. Ratcliff as
borrowers and Arvest Bank as lender attached hereto as Exhibit "A" and made a part hereof by
reference. Interest after default and late penalties under the terms of this Promissory Note shall occur
at the same rate and manner as specified by the said Exhibit "A" Loan Application and Debt
Modification Agreement.

4.    Maker acknowledges that this Promissory Note is secured pursuant to the terms of
the Security Agreement executed by Maker, in which Maker grants a security interest in and to all
of its assets including, but not limited to, its equipment, tools, inventory, accounts receivable and
other intangibles. Maker further acknowledges that this Promissory Note is secured by the Personal
Guaranty of Joe Unger.

5.    In the event:

a.    Maker fails to pay and installment payment that is due and payable on or
before the date such payment is due;

b.    Maker neglects to comply with any of the terms or provisions of this
Promissory Note;

c.    Maker defaults or neglects to comply with any of the terms of any other
promissory note or other agreement between Maker and Holder;

d.    Maker fails to comply with any of the terms or provisions of the Security
Agreement or Guaranty referenced above.

e.    Maker executes or makes an assignment for the benefit of his creditors and/or
a receiver or trustee is appointed for his creditors or the Maker is unable
generally to pay his debts as they become due;

f.    Any proceedings are commenced relating to the Maker under any bankruptcy,
insolvency, readjustment of debt, dissolution or liquidation statutes or any
jurisdiction now or hereafter in effect; or

**Exhibit A**

g.    There is a seizure and sale, or post-judgment attachment or post-judgment judicial process upon all or a substantial part of the property of the Maker,

then Holder, upon the occurrence of any such event may, at his sole option, declare any or all of the

indebtedness evidenced by this Promissory Note to be immediately due and payable, and Holder be

entitled to exercise any and all rights and remedies that the he has against Maker.

6.    Maker hereby waives presentment for payment, demand, notice of nonpayment,

protest, and notice of protest, and agrees that the time of payment hereby may be extended from time

to time, one or more times without notice of such extension or extensions and without previous

consent. No delay on the part of Holder in exercising any rights hereunder shall operate as a waiver

of such rights, nor shall any single or partial exercise of any power or right hereunder preclude other

or further exercise of any power or right hereunder.

7.    If this Promissory Note is placed in the hands of any attorney for collection, the

Maker agrees to pay to Holder, in addition to the unpaid principal and interest due hereon, all costs

of collection, including, but not limited to, reasonable attorney's fees and all court costs incurred.

8.    This Promissory Note has been executed and delivered in, and its terms and

conditions are to be governed and construed by, the laws of the State of Minnesota.

9.    This Promissory Note shall be binding upon the successors and assigns of Maker.

10.    This Promissory Note may be assigned without the consent of the Maker.

Dated and signed this 3rd day of December, 2010.

"MAKER"
Unger Meat Company

By:    Jo Unger, President

Page 3

**Exhibit A**

# PROMISSORY NOTE

$2,250,000                                                    4301 White Bear Parkway
5.5% (Indexed)                                               Vadnais Heights, MN 55110
                                                                December 3, 2010

FOR VALUE RECEIVED, Unger Meat Company, a Minnesota corporation ("Maker"),

promises to pay to the order of James L. Ratcliff ("Holder"), at the address of 24631 South Hwy. 2,

Vinita, Oklahoma, 74301, or at such other place as the Holder may designate and notify the

undersigned, in lawful money of the United States, and in immediately available funds, the principal

sum of $2,250,000, together with interest at the initial rate of five percent (5.5%) per annum.

1.      Principal payments on this Promissory Note shall be deferred for eighteen (18)

months from the date hereof.  During said eighteen-month period, interest shall be payable in

eighteen (18) monthly installments. The first monthly installments shall be $10,310.83 commencing

on January 3, 2011.  The final installment of interest only will be due on June 3, 2012.

2.      Principal and interest payments on this Promissory Note shall become due and

payable commencing nineteen (19) months after the date hereof, the first such payment of principal

and interest in the sum of $18,388.83 (subject to adjustment or set forth below) will be due and

owing on July 3, 2012, with successive installments in said amount being due on the first day of each

month thereafter until June 3, 2017, at which time the entire unpaid balance of principal and interest

shall be due and payable in full.

3.      Interest on all sums owing under the terms of this Promissory Note shall be subject

to adjustment in the amounts and on the effective dates that the interest rate on the sums owing under

the terms of that certain Promissory Note given by James L. Ratcliff as maker to American Bank of

**Exhibit A**

Oklahoma dated November 24, 2010, and attached hereto and made a part hereof by reference shall occur. Interest after default and late payments under the terms of this Note shall be charged in the same manner as specified by the aforesaid Exhibit "A" Promissory Note from James L. Ratcliff to American Bank of Oklahoma.

4.      In the event:

a.      Maker fails to pay and installment payment that is due and payable on or before the date such payment is due;

b.      Maker neglects to comply with any of the terms or provisions of this Promissory Note;

c.      Maker defaults or neglects to comply with any of the terms of any other promissory note or other agreement between Maker and Holder;

d.      Maker fails to comply with any of the terms or provisions of the Security Agreement or Guaranty referenced above.

e.      Maker executes or makes an assignment for the benefit of his creditors and/or a receiver or trustee is appointed for his creditors or the Maker is unable generally to pay his debts as they become due;

f.      Any proceedings are commenced relating to the Maker under any bankruptcy, insolvency, readjustment of debt, dissolution or liquidation statutes or any jurisdiction now or hereafter in effect; or

g.      There is a seizure and sale, or post-judgment attachment or post-judgment judicial process upon all or a substantial part of the property of the Maker,

then Holder, upon the occurrence of any such event may, at his sole option, declare any or all of the indebtedness evidenced by this Promissory Note to be immediately due and payable, and Holder be entitled to exercise any and all rights and remedies that the he has against Maker.

5.      Maker hereby waives presentment for payment, demand, notice of nonpayment, protest, and notice of protest, and agrees that the time of payment hereby may be extended from time

**Exhibit A**

to time, one or more times without notice of such extension or extensions and without previous consent. No delay on the part of Holder in exercising any rights hereunder shall operate as a waiver of such rights, nor shall any single or partial exercise of any power or right hereunder preclude other or further exercise of any power or right hereunder.

6.    If this Promissory Note is placed in the hands of any attorney for collection, the Maker agrees to pay to Holder, in addition to the unpaid principal and interest due hereon, all costs of collection, including, but not limited to, reasonable attorney's fees and all court costs incurred.

7.    This Promissory Note has been executed and delivered in, and its terms and conditions are to be governed and construed by, the laws of the State of Minnesota.

8.    This Promissory Note shall be binding upon the successors and assigns of Maker.

9.    This Promissory Note may be assigned without the consent of the Maker.

Dated and signed this 3rd day of December, 2010.

"MAKER"
Unger Meat Company

By: _____
Joe Unger, President

Exhibit A

Loan 24-133000

**PROMISSORY NOTE** – Fixed or Variable Rate – Real Estate – General

| | DATE OF NOTE |
|---|---|
| | 11/24/2010 |

| DEBTOR'S NAME(S) | LENDER'S NAME AND ADDRESS |
|---|---|
| James L. Ratcliff | AMERICAN BANK OF OKLAHOMA<br>Collinsville<br>P.O. Box 66<br>Collinsville, OK 74021-0066 |

| DEBTOR'S ADDRESS | |
|---|---|
| P.O. Box 402<br>Vinita, OK 74301 | |

| NOTE NUMBER | MATURITY DATE | PRINCIPAL AMOUNT | CUSTOMER NUMBER | OFFICER | SOCIAL SECURITY/TIN NUMBER | ☒ ACTUAL/365 |
|---|---|---|---|---|---|---|
| 24-265800 | 11/24/2011 | $2,000,000.00 | | JAL | 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 | ☐ ACTUAL/365 |

| ☐ FIXED INTEREST RATE PER ANNUM | ☒ VARIABLE INTEREST RATE INDEX | | | MAXIMUM PER ANNUM INTEREST RATE CHANGE |
|---|---|---|---|---|
| | PRESENT INDEX RATE .......... 3.250 % | VARIABLE RATE INDEX Wall Street Journal Prime | | once a day |
| | MARGIN OVER/UNDER INDEX 2.000 % | | | MINIMUM INTEREST RATE  5.500 % |
| | INITIAL PER ANNUM RATE ....... 5.500 % | | | MAXIMUM INTEREST RATE  21.000 % |

| ☒ NEW LOAN | 24-2471000 | PURPOSE OF LOAN |
|---|---|---|
| ☒ RENEWAL OF LOAN NUMBER(S) | | Cattle operation expense until Spring & operating |
| ☐ FULLY ADVANCED  ☐ MULTIPLE ADVANCES  ☒ REVOLVING CREDIT | | expense for Minnesota meat packing plant; Originally |
| COLLATERAL DESCRIPTION | | Cattle Operating Expense |
| 1st RE Mtg on at 35996 Oak Tree Drive Ketchum OK, Delaware County | | |

PAYMENT TERMS
Demand or in absence of demand; This note is payable in payments of all accrued interest due quarterly beginning February 24, 2011, a final payment of outstanding principal plus all accrued interest shall be due and payable on November 24, 2011.

**PROMISE TO PAY.** For value received, the undersigned Debtor, whether one or more, and jointly and severally if more than one, agrees to the terms of this Note and promises to pay to the order of the Lender named above, at its place of business as indicated in this Note or such other place as may be designated in writing by Lender, the Principal Amount of this Note and any accrued and unpaid Finance Charges, together with interest on the unpaid Principal Amount until Maturity at the per annum interest rate(s) stated above and according to the payment terms stated above. Depending on the box checked above, interest on this Note is calculated either on the assumption that every year has 360 days and every month has 30 days (30/360) or on the actual number of days elapsed on a basis of a 360 day year (Actual/360) or a 365 day year (Actual/365). For purposes of computing interest and determining the date principal and interest payments are received, all payments will be deemed made only when received in collected funds. Payments are applied first to accrued and unpaid interest and other charges, and then to payment of the unpaid principal balance. In this Note, "Debtor" includes any party liable under this Note, including endorsers, co-makers, guarantors and otherwise, and "Lender" includes all subsequent holders.

**VARIABLE RATE.** If this is a Variable Rate transaction as indicated above, the interest rate shall vary from time to time with changes (whether increases or decreases) in the Index Rate shown above. The interest rate on this Note will be the Index Rate plus a Margin, if any, as indicated above. Each change will become effective on the same date the Index Rate changes unless a different effective date is indicated above. If the Index Rate is Lender's base or prime rate, it is determined by Lender in its sole discretion, primarily on a basis of its cost of funds, it is not necessarily the lowest rate Lender is charging its customers, and is not necessarily a published rate.

**LATE PAYMENTS.** When permitted by law, any principal and/or interest amount not paid within 10 calendar days after the due date will be assessed the greater _____ of $.00 _____ or 5.000 _____ % of the amount past due, as a late charge fee, with a minimum fee of $31.00 _____. At any time after the maturity date, Lender may at its sole discretion raise the interest rate on any unpaid principal and/or interest to the applicable rate stated in this Note plus NA _____ per annum ("Default Rate"). In no event shall the interest rate and related charges either before or after maturity be greater than permitted by law.

**ALL PARTIES PRINCIPALS.** All Debtors shall each be regarded as a principal and each Debtor agrees that any party to this Note, with Lender's approval and without notice to any other party, may from time to time renew this Note or consent to one or more extensions or deferrals of the Maturity Date for any term(s) or to any other modification(s), and all Debtors shall be liable in same manner as on the original note.

**ADVANCES AND PAYMENTS.** If the Fully Advanced box is checked, then the Debtor acknowledges that the entire Principal Amount has been advanced to the Debtor or for Debtor's account or benefit. For Multiple Advances or Revolving Credit, unless otherwise agreed in writing, Lender has no event made a commitment to make any advances and has sole discretion to make, or not

make, each advance under this Note. If the Multiple Advances box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in installments, up to the Principal Amount, but that even if the Debtor prepays, the Debtor has no right to redraw any amounts disbursed. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time. If the Revolving Credit box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments up to the Principal Amount and that the remaining terms of this paragraph shall apply to this Note. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. The Debtor understands that the maximum amount of all such advances outstanding at any one time cannot exceed the Principal Amount, but that the Debtor may repay and reborrow up to the Principal Amount during the term of this Note. If the aggregate outstanding amount advanced under this Note ever exceeds the Principal Amount, then the Debtor will repay the excess upon demand, plus interest on the excess. There may be times when no principal is outstanding on this Note, but this Note and any collateral securing this Note remain valid and effective as to future advances under this Note. Any loans or advances the Lender makes to the Debtor or for the Debtor's account or benefit are presumed to be made under the terms of this Note. The Lender may make advances under this Note at the oral or written request of any person designated or authorized by the Debtor except the Debtor revokes such designation or authorization in writing received by the Lender, provided that the Lender has the right, but is not obligated, to require written authorization from the Debtor prior to honoring any oral request. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time.

**PREPAYMENT.** Debtor shall have the right to prepay all or any part of the principal due under this Note at any time, subject to the following conditions: (a) all interest must be paid through the date of any prepayment; (b) if this Note provides for monthly or other periodic payments, there will be no changes in the due dates or amounts following any partial prepayments unless Lender agrees to such changes in writing; and (c) upon prepayment, in whole or in part, Lender may require Debtor to pay a fee or premium calculated as follows (this fee/premium provision will not apply if prohibited by applicable law):

**COLLATERAL.** This Note is secured by real property and the debt evidenced by this Note and all other obligations of Debtor to Lender, including renewals and extensions, are secured by all collateral securing this Note and by all other security interests and mortgages previously or later granted to Lender as more specifically described in security agreements, mortgages and other securing documentation, and by all money, deposits and other property owned by any Debtor and in Lender's possession or control.

DEBTOR(S) SIGNATURE(S)

x _James L. Ratcliff_ (signature)
James L. Ratcliff

Form 80 0632-2                                               © Copyright 07/06 American Ba_

EXHIBIT

_A_

Exhibit A

ADDITIONAL PROVISIONS ON REVERSE SIDE

**DEBTOR EXPRESSLY AGREES:**

## ADDITIONAL PROVISIONS

**ACCELERATION.** At option of Lender, the unpaid balance of this Note and all other obligations of Debtor to Lender, whether direct or indirect, absolute or contingent, now existing or later arising, shall become immediately due and payable without notice or demand, upon or after the occurrence or existence of any of the following events or conditions: (a) any payment required by this Note or by any other note or obligation of Debtor to Lender or to others is not made when due, or any event or condition occurs or exists which results in acceleration of the maturity of any Debtor's obligation to Lender or to others under any promissory note, agreement or undertaking; (b) Debtor defaults in performing any covenant, obligation, warranty or provision contained in any loan agreement or in any instrument or document securing or relating to this Note or any other note or obligation of Debtor to Lender or to others; (c) any warranty, representation, financial information or statement made or furnished to Lender by or on behalf of Debtor proves to have been false in any material respect when made or furnished; (d) any levy, seizure, garnishment or attachment is made against any asset of any Debtor; (e) Lender determines, at any time and in Lender's sole discretion, that the prospect of payment of this Note is impaired; (f) whenever, in Lender's sole judgment, the collateral for the debt evidenced by this Note becomes unsatisfactory or insufficient either in character or value and, upon request, Debtor fails to provide additional collateral as required by Lender; (g) all or any part of the collateral for the debt evidenced by this Note is lost, stolen, substantially damaged or destroyed; (h) any Debtor dies or becomes incompetent, insolvent, dissolves, changes ownership or senior management, or terminates their existence; or (i) a receiver is appointed over all or part of any Debtor's property, or any Debtor makes an assignment for the benefit of creditors, files for relief under any bankruptcy or insolvency laws, or becomes subject to an involuntary proceeding under such laws. Upon the occurrence of any event described above, Lender may, at its option and with or without accelerating the Note, increase the Interest Rate on this Note to the Default Rate provided herein.

**RIGHT OF OFFSET.** Except as otherwise restricted by law, any indebtedness due from Lender to Debtor, including, without limitation, any deposits or credit balances due from Lender, is pledged to secure payment of this Note and any other obligation to Lender of Debtor, and may at any time while the whole or any part of such obligation(s) remain(s) unpaid, either before or after maturity of this Note, be set off, appropriated, held or applied toward the payment of this Note or any other obligation to Lender by any Debtor.

**ADDITIONAL PROVISIONS.** (1) Debtor agrees, if requested, to furnish to Lender copies of income tax returns as well as balance sheets and income statements for each fiscal year following Date of Note and at more frequent intervals as Lender may require. (2) No waiver by Lender of any payment or other right under this Note or any related agreement or documentation shall operate as a waiver of any other payment or right. All Debtors waive presentment, notice of acceleration, notice of dishonor and protest and consent to substitutions, releases and failure to perfect as to collateral and to additions or releases of any Debtor. (3) This Note and the obligations evidenced by it are to be construed and governed by the laws of the state indicated in Lender's address shown in this Note. (4) All Debtors agree to pay costs of collection, including, as allowed by law, an attorney's fee equal to a minimum of 15% of all sums due upon default or such other maximum fee as allowed by law. (5) All parties signing below acknowledge receiving a completed copy of this Note and related documents, which contain the complete and entire agreement between Lender and any party liable for payment under this Note. No variation, condition, modification, change or amendment to this Note or related documents shall be binding unless in writing and signed by all parties. No legal relationship is created by the execution of this Note and related documents except that of debtor and creditor or as stated in writing.

Form 01-0488 3

© Copyright 1976 American Bank Systems, Inc.

**Exhibit A**

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT is executed and delivered as of this 3rd day of December, 2010, by UNGER MEAT COMPANY, a Minnesota corporation (the "Debtor"), to JAMES L. RATCLIFF (the "Secured Party"), with reference to the following facts:

A.    Debtor and Secured Party have entered into a transaction whereby Secured Party financed the purchase price and acquisition of all of Debtor's business assets;

B.    Debtor and Secured Party have entered into a second transaction whereby Secured Party has provided additional working capital for Debtor's benefit;

C.    Debtor has executed two promissory notes dated December 3, 2010 in favor of Secured Party which evidence the financing arrangement described in paragraph A. above; and

D.    Debtor and Secured Party desire to enter into this Security Agreement to secure payment of the debt evidenced by the two promissory notes as owed to Secured Party arising from the purchase of such business assets, together with any and all other debts owing from Debtor to Secured Party.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants herein contained, and other fair and valuable considerations, the receipt and adequacy of which are hereby acknowledged, Debtor and Secured Party agree as follows:

1.    <u>Secured Interest</u>.  Debtor does hereby grant, bargain, sell, and convey unto Secured Party a purchase money security interest in and to all of Debtor's equipment, including but not limited to the equipment described on Exhibit "1" hereto, inventory, lease agreement, accounts receivable, furniture and fixtures, whether now owned or hereafter acquired, together with all proceeds and products thereof and replacements therefor (hereafter the "Collateral").

2.    <u>Obligations Secured</u>.  The security interest created hereby is given to secure the due, punctual and complete performance by Debtor of all Debtor's obligations now or hereafter owed to Secured Party.

3.    <u>Representations and Warranties</u>.  Debtor does hereby represent and warrant to Secured Party as follows:

a.    <u>Ownership of Collateral</u>.  Debtor is the owner of the Collateral and is not prohibited by contract or otherwise from subjecting the same to the security interest created hereby.  Immediately prior to the execution of this Security

Page 1

**Exhibit B**

Agreement the Collateral is free and clear of all security interests and encumbrances of every nature.

b.    <u>Financing Statements</u>. Debtor will execute and deliver to Secured Party such certificates and other documents or instruments as may be necessary to enable Secured Party to perfect the security interest created hereby including, without limitation, such financing statements, certificates and other documents as may be necessary to perfect the security interest created hereby in any collateral hereafter acquired by Debtor or in any replacement or proceeds of the Collateral.

4.    <u>Affirmative Covenants</u>. Until this Agreement is terminated, Debtor covenants that it shall:

a.    Notify Secured Party in writing, promptly upon Debtor's learning thereof, of any litigation or the institution of any suit or administrative proceeding which may materially and adversely affect Debtor's financial condition or Secured Party's security interest in the Collateral, whether or not the claim is considered by Debtor to be covered by insurance;

b.    Maintain the Collateral, as the same is constituted from time to time, free and clear of all liens, claims, security interests and encumbrances;

c.    Notify Secured Party, in writing, promptly upon Debtor's learning of any violation of any law, statute, regulation or ordinance of any governmental entity, or of any agency thereof, applicable to Debtor which violation in any respect may materially and adversely affect the Collateral or Debtor' property, assets, operations or condition, financial or otherwise; and

d.    Notify Secured Party in writing, within thirty (30) days after the occurrence thereof, of Debtor's default under any note, indenture, loan agreement, mortgage, lease, deed or other similar agreement to which Debtor are a party or by which Debtor are bound.

5.    <u>Negative Covenants</u>. Without Secured Party's prior written consent, until this Agreement is terminated, Debtor covenants that it shall not:

a.    Enter into any transaction which materially and adversely affects the Collateral or Debtor's ability to repay all obligations owed to Secured Party;

b.    Encumber, pledge, mortgage, grant a security interest in, assign, sell, lease or otherwise dispose of or transfer, whether by sale, merger, consolidation,

**Exhibit B**

liquidation, dissolution, or otherwise, outside the ordinary course of business, any of the Collateral without Secured Party's consent in writing.

c.   Declare or pay any dividend or bonus with respect to the stock of the Debtor.

d.   Pay any salary, bonus, consulting fee or other payment of any description to the officers and directors of Debtor apart from the salaries and benefits detailed at Exhibit "2" hereto.

6.    <u>Term</u>. This Agreement shall terminate upon Debtor's full performance, payment and satisfaction of the obligations owed to Secured Party.

7.    <u>Insurance</u>. Debtor shall insure the Collateral in Secured Party's name against loss or damage by accident, fire, theft, burglary, pilferage, loss in transit and such other hazards as Secured Party shall specify in amounts and under policies by insurers acceptable to Secured Party, and all premiums thereon shall be paid by Debtor and the policies or a certificate thereof signed by the insurer shall be delivered to Secured Party.  Each such policy shall name Secured Party as an additional named insured, and shall provide that such policy may not be amended or canceled without thirty (30) days prior written notice to Secured Party.  If Debtor fails to do so, Secured Party may (but shall not be required to) procure such insurance and charge the cost to Debtor's account as part of the obligations secured by the Collateral.  Copy of page 1 showing terms of insurance and showing Secured Party as additional insureds shall be provided to Secured Party upon each renewal.

8.    <u>Default</u>. Debtor shall be in default hereunder in the event Debtor fails to punctually and completely satisfy all of Debtor's obligations to Secured Party embodied in any promissory note or otherwise or in the event of a failure by Debtor to comply with any term, covenant or condition of this agreement.  Debtor will be provided a ten-day (10) grace period for all installment payments on the promissory note, and payment within such grace period will not be considered an Event of Default.  Otherwise, the occurrence of any such events shall herein be referred to as an "Event of Default".

9.    <u>Remedies</u>.  If an Event of Default occurs, Secured Party shall have all remedies available under law. Without limitation of the foregoing, at the request of Secured Party, Debtor will assemble the Collateral and make it available to Secured Party at a place designated by Secured Party.  Debtor agrees that a period of five days from the time the notice is sent shall be a reasonable period for notification of any sale or other disposition of Collateral by the Secured Party.  Debtor agrees to pay, on demand, the amount of all expenses for storing and selling the Collateral, and Debtor further agrees that if this Security Agreement, or any obligation secured by it, is referred to an attorney for protecting or defending the priority of Secured Party's interest or for enforcing any of the provisions thereof, Debtor shall pay a reasonable attorneys' fee, all court costs, and all costs incurred by Secured Party in the taking possession of, preservation, maintenance, and sale of the Collateral, which amounts shall be deemed a portion of the indebtedness secured hereby, and any

**Exhibit B**

and all such items shall bear interest from the date incurred by Secured Party until repaid by Debtor at the rate of eighteen percent (18%) per annum.

10.    <u>Governing Law</u>.  This Security Agreement shall be governed by and construed in accordance with the laws of the State of Minnesota applicable to contracts made and performed entirely therein.

11.    <u>Notices</u>.  All notices, requests, demands, instructions, and other communications called for hereunder or contemplated hereby shall be given in the manner set forth herein and to the Debtor and Secured Party at their respective addresses as set forth below:

<u>Secured Party</u>:

    Ratcliff Ranch and Investment Co.
    Attention:  James L. Ratcliff
    24631 South Hwy. 2
    Vinita, OK  74301

<u>With Copy To</u>:

    Thomas J. McGeady, Esquire
    Logan & Lowry, LLP
    101 South Wilson
    P. O. Box 558
    Vinita, OK  74301

<u>Debtor</u>:

    Unger Meat Company
    Attention:  Joe Unger
    4301 White Bear Parkway
    Vadnais Heights, MN  55110

<u>With Copy To</u>:

    _____
    _____
    _____

12.    <u>Whole  Agreement – No  Oral  Modification</u>.  This  Agreement embodies all representations, warranties, and agreements of the parties hereto and may not be altered or modified except by an agreement in writing signed by the parties.

Page 4

**Exhibit B**

13.   <u>Remedies Cumulative</u>.  The various rights, powers, elections, and remedies of the parties hereto shall be considered as cumulative and no one of them is exclusive of the others or exclusive of any right or remedy allowed by law and no right shall be exhausted by being exercised on one or more occasions.

14.   <u>Benefit of Agreement</u>.  This Agreement shall be binding upon and the benefits shall inure to the parties and their respective successors and assigns.

15.   <u>Section Headings</u>.  The section headings contained in this Agreement are for convenient reference only and shall not in any way affect the meaning or interpretation of this Agreement.

EXECUTED AND DELIVERED the day and year first above written.

"DEBTOR":

UNGER MEAT COMPANY

By:   _____
      Joe Unger

"SECURED PARTY"

_____
James L. Ratcliff

Page 5

**Exhibit B**

**Filing NO:** 201022606390
**Filing Date:** 2010/12/29
**Filing Time:** 12:23 PM
**State of Minnesota**
**Processing Office:** Secretary of State
**Filed by:** boono01

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Henningson & Snoxell, Ltd.  (SMG)
6900 Wedgwood Road, Suite 200
Maple Grove, MN 55311

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** – insert only <u>one</u> debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Unger Meat Company | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4301 White Bear Parkway | Vadnais Heights | MN | 55110 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Corporation | Minnesota | 3826691-2 ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only <u>one</u> debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only <u>one</u> secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| Ratcliff | James | | L. | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 24631 South Highway 2 | Vinita | OK | 74301 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See attached Exhibit A

This is a purchase-money security interest.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | | | 7. See Instruction Debtor(s) | | |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

401 FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 9/05)

Exhibit C

# Exhibit A

**Unger Meat Company**
**Equipment Schedule**
**11/30/2010**

_Production Equipment Schedule_

| Equipment Location | Product Description | Vendor | Cost |
|---|---|---|---|
| GRINDING LINE | | | |
| | OMNI Y / WITH SPARE PARTS | Provisor | 157,842.30 |
| | DOMINATOR 14 | Provisor | 193,700.35 |
| | DOMINATOR 14/spare parts | Provisor | 6,936.80 |
| | DOMINATOR 14/Co2 | Provisor | 58,425.00 |
| | 5" SQX PAPER ASSEMBLY (VAC+HOP) | Provisor | 7,154.80 |
| | DOMINATOR 14/CO2 - Steel for future | Provisor | 2,157.50 |
| | AUGER WITH PIVOT | Provisor | 41,880.25 |
| | PLATFORM | Provisor | 14,713.00 |
| | PIRANHA | Provisor | 50,237 |
| | LOAD CELL (LATE ADD ON) | Provisor | 10,000.00 |
| | COMBO DUMPERS | A-One | 26,156.00 |
| | TABLES 53 | A-One | 4,972.00 |
| | ANTI BAY | M&M | 16,300 |
| | GONDOLAS | M&M | 18,369.00 |
| | ALL SCALES | Kennedy | 11,680 |
| | 2 MEAT BELTS ACETLE | Unisource | 70,005 |
| | CO2 GAS INFALL EQUIPMENT | TC Oxygen | 50,000.00 |
| | **Total Grinding Line** | | **867,146.29** |
| FRESH PATTIE LINE | | | |
| | FORMAX | Provisor | 498,262 |
| | FORMAX/Spare parts | Provisor | 8,384 |
| | Paper Hopper | Provisor | 6,750 |
| | Mold Plates (we got 11 plates) | Provisor | 58,006 |
| | MOLD PLATES 10 | Tomahawk | 34,000 |
| | MULTIVAC | Unisource | 231,216 |
| | METAL DETECTOR | Unisource | 45,090 |
| | HITACHI DATER | Unisource | 13,900 |
| | BOX LABELER | Unisource | 12,060 |
| | GRAVITY CONVEYOR | Unisource | 3,450 |
| | LABEL CONVEYOR | Unisource | 31,150 |
| | COLUMN DUMPER | A-One | 22,843 |
| | **Total Fresh Patty Line** | | **985,341** |
| FRESH BULK/ RETAIL LINE | | | |
| | VEMAG(WEILER) | Unisource | 126,010 |
| | INLINE GRINDER & CUT OFF | Unisource | 25,910 |
| | SMART CONVEYOR | Unisource | 31,220 |
| | TAPE MACHINE | Unisource | 10,347 |
| | VACUUM | Unisource | 232,516 |
| | PACK OFF TABLE/BELT | Unisource | 30,000 |
| | METAL DETECTOR | Unisource | 26,481 |
| | SPIRAL FREEZER | JST | 620,000 |
| | COLUMN DUMPER | A-One | 12,214 |
| | Other Preferred | Provisor | 64,262 |
| | **Total Fresh Bulk/Retail Line** | | **1,239,119** |
| RETAIL FROZEN | | | |
| | ADCO BOX MACHINE | Unisource | 78,500 |
| | TIPPER TIE | Unisource | 147,885 |
| | CHUB METAL DETECTOR | Unisource | 19,650 |
| | BAND SEALER | Unisource | 14,855 |
| | EMBOSSING CODER | | 3,497 |
| | **Total Retail Frozen Line** | | **264,187** |
| DOCK | | | |
| | FORKLIFT | Quality Forklift | 19,209 |
| | Forklift Parts | Quality Forklift | 536 |
| | Forklift Parts | Quality Forklift | 632 |
| | RIDERJ | Quality Forklift | 15,226 |
| | STRETCHWRAPPER | Unisource | 19,782 |
| | AIR SYSTEM | Air Power Equipment | 22,887 |
| | **Total Dock** | | **68,274** |
| REFRIGERATION EQUIPMENT | | | |
| | Mechanical Equipment | Solid Refrigeration | 547,624. |
| | **Total Mechanical Equipment** | | **547,624** |
| KITCHEN | | | |
| | Racking (Cooler, Freezer etc.) | Quality | 64,185 |
| | Hot-Ise Production softwire | Heit-Tek | 100,000 |
| | Stainless Steel | BJ | 10,000 |
| | Kitchen Equipment | Own Sources | 15,446 |
| | **Total Kitchen Equipment** | | **189,631** |
| GRAND EQUIPMENT TOTAL | | | 4,161,321 |

# Exhibit C

▬▬▬▬▬▬
▬▬▬▬▬▬
▬▬▬▬▬▬

| | |
|---|---|
| **UCC FINANCING STATEMENT AMENDMENT** | Filing NO: 20112290995 |
| FOLLOW INSTRUCTIONS (front and back) CAREFULLY | Filing Date: 2011/01/24 |
| | Filing Time: 5:00 PM |
| | State of Minnesota |
| | Processing Office: Secretary of State |
| | Filed by: schdo01 |

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Henningson & Snoxell, Ltd.  (SMG)
6900 Wedgwood Road, Suite 200
Maple Grove, MN 55311

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE#
**201022606390**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record.  Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable)

6. CURRENT RECORD INFORMATION:

OR | 6a. ORGANIZATION'S NAME
**Unger Meat Company**

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) or ADDED INFORMATION:

OR | 7a. ORGANIZATION'S NAME

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATION ID#, if any | ☐ NONE |
|---|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

See attached Exhibits "A," "B," and "C."

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment).  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

OR | 9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| **Ratcliff** | **James** | **L.** | |

10. OPTIONAL FILER REFERENCE DATA
**26225-002**

Exhibit D

Filing NO: 20112250093

## EXHIBIT "A"

This financing statement covers the following types (or items) of property:

(a) INVENTORY:

    All inventory of Debtor, whether now owned or hereafter acquired and wherever located; together with

(b) EQUIPMENT:

    The following equipment of Debtor:

    All furniture, fixtures, and equipment of Debtor, whether now owned or hereafter acquired and wherever located, including without limitation, the furniture, fixtures, and equipment listed in the attached Exhibit "B;" together with:

(c) ACCOUNTS AND OTHER RIGHTS TO PAYMENT:

    Each and every right of Debtor to the payment of money, whether such right to payment now exists or hereafter arises, whether such right to payment arises out of a sale, lease or other disposition of goods or other property by Debtor, out of a rendering of services by Debtor, out of a loan by Debtor, out of the overpayment of taxes or other liabilities of Debtor, or otherwise arises under any contract or agreement, whether such right to payment is or is not already earned by performance, and howsoever such right to payment may be evidenced, together with all other rights and interests (including all liens and security interests) which Debtor may at any time have by law or agreement against any account debtor or other obligor obligated to make any such payment or against any of the property of such account debtor or other obligor; all including, but not limited to, all present and future debt instruments, chattel papers, accounts, investment property, letters-of-credit rights, letters of credit, documents, deposit accounts, payment intangibles, loans and obligations receivable, tax refunds and all supporting obligations relating to the foregoing; and together with

(d) LEASES

    All rents, issues, income, revenue, receipts, fees, and profits now due or which may hereafter become due under or by virtue of and together with all right, title and interest of the Debtor in and to any lease, license, sublease, contract or other kind of occupancy agreement, whether written or verbal, for the use or occupancy of the real property legally described in the attached Exhibit "C" or any part thereof, together with all security therefor and all monies payable thereunder, including, without limitation, tenant security deposits, and all books and records which contain information pertaining to payments made thereunder and security therefor.

(e) GENERAL INTANGIBLES:

    All general intangibles of Debtor, whether now owned or hereafter acquired, including, but not limited to, applications for patents, patents, applications for copyrights, copyrights, application for trademarks, trademarks, trade secrets, good will, trade names, other names, customer lists, permits and franchises, software, payment intangibles and the right to use Debtor's name; together with

all substitutions and replacements for and products of any of the foregoing property and together with proceeds of any and all of the foregoing property, including without limitation all investment property, letter-of-credit rights, letters of credit, other rights to payment, deposit accounts, money insurance proceeds and general intangibles related to the foregoing property, and all refunds of insurance premiums due or to become due under all insurance policies covering the foregoing property, and, in the case of all tangible collateral, together with all accessions, together with (a) all accessories, attachments, fittings, increases, parts, equipment, returns and repairs now or hereafter attached or affixed to or used in connection with any such goods, and (b) all warehouse receipts, bills of lading and other documents of title now or hereafter covering such goods. All books and records relating to any of the foregoing Collateral and all computers and other equipment (and computer software used in connection therewith) used in connection with the record keeping for the collateral.

**Exhibit D**

**Unger Meat Company**
**Equipment Schedule**
**11/30/2010**

*Production Equipment Schedule*

# Exhibit "B"

| Equipment Location | Product Description | Vendor | Cost |
|---|---|---|---|
| **GRINDING LINE** | | | |
| | OMNI V / WITH SPARE PARTS | Provisor | 137,862.30 |
| | DOMINATOR 14 | Provisor | 398,700.13 |
| | DOMINATOR 14/spare parts | Provisor | 6,896.80 |
| | DOMINATOR 14/Co2 | Provisor | 88,425.00 |
| | 5" SGR PAPER ASSEMBLY (VAC-HOP) | Provisor | 7,254.80 |
| | DOMINATOR 14/CO2 - fitted for future | Provisor | 2,197.50 |
| | AUGER WITH PIVOT | Provisor | 41,880.25 |
| | PLATFORM | Provisor | 14,725.00 |
| | PIRANHA | Provisor | 50,165 |
| | LOAD CELL (LATE ADD ON) | Provisor | 10,000.00 |
| | COMBO DUMPERS | A-One | 26,159.00 |
| | TABLES SS | A-One | 4,372.00 |
| | ANTI-RAY | M&M | 18,500 |
| | GONDOLAS | M&M | 13,369.00 |
| | ALL SCALES | Kennedy | 11,680 |
| | 2 MEAT BELTS ACETLE | Unisource | 70,005 |
| | CO2 GAS INSTALL EQUIPMENT | TC Oxygen | 10,000.00 |
| | **Total Grinding Line** | | **867,146.28** |
| **FRESH PATTIE LINE** | | | |
| | FORMAX | Provisor | 430,262 |
| | FORMAX/Spare parts | Provisor | 9,994 |
| | Paper Hopper | Provisor | 6,750 |
| | Mold Plates (we get 11 plates) | Provisor | 38,006 |
| | MOLD PLATES 10 | Tomahawk | 14,000 |
| | MULTIVAC | Unisource | 232,516 |
| | METAL DETECTOR | Unisource | 65,000 |
| | HITACHI DATER | Unisource | 35,900 |
| | BOX LABELER | Unisource | 52,060 |
| | GRAVITY CONVEYOR | Unisource | 3,450 |
| | LABEL CONVEYOR | Unisource | 28,150 |
| | COLUMN DUMPER | A-One | 22,963 |
| | **Total Fresh Patty Line** | | **985,341** |
| **FRESH BULK/ RETAIL LINE** | | | |
| | VEMAG(REISER) | Unisource | 128,010 |
| | INLINE GRINDER & CUT OFF | Unisource | 25,010 |
| | SMART CONVEYOR | Unisource | 81,220 |
| | TAPE MACHINE | Unisource | 10,387 |
| | VACCUM | Unisource | 232,516 |
| | PACK OFF TABLE/BELT | Unisource | 30,000 |
| | METAL DETECTOR | Unisource | 25,491 |
| | SPIRAL FREEZER | JBT | 630,000 |
| | COLUMN DUMPER | A-One | 12,224 |
| | Cuber Perforated | Provisor | 64,262 |
| | **Total Fresh Bulk/Retail Line** | | **1,239,119** |
| **RETAIL FROZEN** | | | |
| | ADCO BOX MACHINE | Unisource | 78,500 |
| | TIPPER TIE | Unisource | 147,585 |
| | CHUB METAL DETECTOR | Unisource | 18,650 |
| | BAND SEALER | Unisource | 14,855 |
| | EMBOSSING CODER | | 5,497 |
| | **Total Retail Frozen Line** | | **264,187** |
| **DOCK** | | | |
| | FORKLIFT | Quality Forklift | 19,209 |
| | Forklift Parts | Quality Forklift | 536 |
| | Forklift Parts | Quality Forklift | 852 |
| | RIDERS | Quality Forklift | 15,016 |
| | STRETCHWRAPPER | Unisource | 13,292 |
| | AIR SYSTEM | Air Power Equipment | 19,887 |
| | **Total Dock** | | **68,274** |
| **REFRIGERATION EQUIPMENT** | | | |
| | Mechanical Equipment | Solid Refrigeration | 547,624 |
| | **Total Mechanical Equipment** | | **547,624** |
| **KITCHEN** | | | |
| | Racking (Cooler, Freezer etc.) | Quality | 64,185 |
| | Hol-tec Production software | Hol-Tek | 100,000 |
| | Stainless Steel | SS | 10,000 |
| | Kitchen Equipment | Don Steeves | 15,446 |
| | **Total Kitchen Equipment** | | **189,631** |
| **GRAND EQUIPMENT TOTAL** | | | **4,161,321** |

Exhibit D

Filing Number: 854026600022
Date: 11/12/2015
Time: 4:00 PM
STATE OF MINNESOTA
Office: Office of the Minnesota
Secretary of State

# UCC3 – Continuation – UCC Financing Statement

**ORIGINAL FILING NUMBER:**  201022606390

**ORIGINAL FILING DATE:**  12/29/2010

**RETURN ACKNOWLEDGEMENT TO:**
Steve Graffunder
6900 WEDGWOOD ROAD
MAPLE GROVE, MINNESOTA (MN)  55311

## AUTHORIZING PARTY

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL(S)INITIAL(S) |
|---|---|---|
| Ratcliff | James | L. |

Exhibit E

Filing Number: 1061988100028
Date: 01/10/2019
Time: 4:28 PM
STATE OF MINNESOTA
Office: Office of the Minnesota
Secretary of State

# UCC3 - Debtor Change - UCC Financing Statement

**ORIGINAL FILING NUMBER:** 201022606390

**ORIGINAL FILING DATE:** 12/29/2010

**RETURN ACKNOWLEDGEMENT TO:**
Kathy Brandt
6900 Wedgwood Road
Maple Grove, MN 55311

## DEBTOR INFORMATION

**ORGANIZATION'S NAME**
Rancher's Legacy Meat Co.

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4301 White Bear Parkway | Vadnais Heights | MN | 55110 | USA |

## AUTHORIZING PARTY

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL(S)INITIAL(S) |
|---|---|---|
| Ratcliff | James | L. |

Exhibit F

| Customer No. | Name | Credit Limit | Balance Due | Current | 31 - 60 Days | 61 - 90 Days | Over 90 Days |
|---|---|---|---|---|---|---|---|
| AUG001 | Augustine's Bar & Bakery | No Limit | 177.69 | 207.27 | 0.00 | 0.00 | -29.58 |
| BAR002 | Barker's Bar and Grill | No Limit | 1,803.65 | 0.00 | 1,803.65 | 0.00 | 0.00 |
| BEK002 | BEK - Albuquerque | No Limit | 19,379.96 | 19,171.45 | 0.00 | 0.00 | 208.51 |
| BEK003 | BEK - Amarillo | No Limit | 20,570.80 | 20,568.11 | 0.00 | 0.00 | 2.69 |
| BEK004 | BEK - Dallas/Fort Worth | No Limit | 101,324.37 | 74,949.94 | 0.00 | 0.00 | 26,374.43 |
| BEK005 | BEK - Houston | No Limit | 103,912.00 | 90,911.66 | 195.08 | 116.52 | 12,688.74 |
| BEK006 | BEK - Little Rock | No Limit | 15,041.80 | 15,041.80 | 0.00 | 0.00 | 0.00 |
| BEK007 | BEK - Oklahoma | No Limit | 69,016.08 | 64,160.61 | 0.00 | 0.00 | 4,855.47 |
| BEK008 | BEK - San Antonio | No Limit | 132,418.15 | 132,418.12 | 0.00 | 0.00 | 0.03 |
| BEK009 | BEK - Alabama | No Limit | 24,163.07 | 24,163.07 | 0.00 | 0.00 | 0.00 |
| BIG002 | Big Ten Supper Club, Inc | No Limit | -0.45 | 0.00 | 0.00 | 0.00 | -0.45 |
| BPP001 | Beeler's Pure Pork | No Limit | 4,210.96 | 4,210.96 | 0.00 | 0.00 | 0.00 |
| BRU001 | Revelry, LLC  dba Brunson's | No Limit | 1,791.45 | 1,791.45 | 0.00 | 0.00 | 0.00 |
| CAR001 | Cargill Meat Solutions | No Limit | 60,385.68 | 69,178.49 | 0.00 | -49.20 | -8,743.61 |
| CCD001 | Concord Farms, LLC | No Limit | 3,933.55 | 0.00 | 0.00 | 0.00 | 3,933.55 |
| COS001 | Cossettas Inc. | No Limit | 21,204.45 | 21,204.45 | 0.00 | 0.00 | 0.00 |
| CRO001 | Regency Midwest Ventures dba Crown Plaza Mpls West | No Limit | -4,000.25 | 0.00 | 0.00 | 0.00 | -4,000.25 |
| EMP001 | Employee Purchase Program | No Limit | 1,083.33 | 1,083.33 | 0.00 | 0.00 | 0.00 |
| ENT002 | Entrees Finest | No Limit | 8,547.00 | 8,547.00 | 0.00 | 0.00 | 0.00 |
| GOL001 | Gold Nugget Tavern & Grille | No Limit | 7,783.42 | 0.00 | 0.00 | 0.00 | 7,783.42 |
| GPB001 | Great Plains Beef, LLC | No Limit | 9,192.38 | 0.00 | 0.00 | 0.00 | 9,192.38 |
| IND001 | Indianhead Foodservice Dist | No Limit | 8,162.12 | 15,177.36 | 0.00 | -7,015.00 | -0.24 |
| KEM001 | Kemps LLC V#50364 | No Limit | 1,184.40 | 1,184.40 | 0.00 | 0.00 | 0.00 |
| LAN002 | Lancer Catering | No Limit | 6,129.16 | 5,111.57 | 2,521.95 | 115.40 | -1,619.76 |
| MAL001 | Malones Bar and Grill | No Limit | 136.71 | 136.71 | 0.00 | 0.00 | 0.00 |
| MAL002 | MALLORY'S RESTAURANT & ROOFTOP BAR | No Limit | -162.00 | 0.00 | 0.00 | 0.00 | -162.00 |
| MAS001 | Mason Brothers Co. | No Limit | -609.00 | 0.00 | 0.00 | 0.00 | -609.00 |
| MAY002 | Maynards Restaurant - Rogers | No Limit | 329.43 | 375.00 | 0.00 | 0.00 | -45.57 |
| MBD001 | Martin Brothers Distributing Co., Inc. | No Limit | 28,636.60 | 28,636.60 | 0.00 | 0.00 | 0.00 |
| MID001 | Midamar Corporation | No Limit | 104,158.66 | 55,612.38 | 50,165.08 | 0.00 | -1,618.80 |
| MISC001 | Miscellaneous | No Limit | 3,393.98 | 3,393.98 | 0.00 | 0.00 | 0.00 |
| MOR001 | MHC Bunker Hills LLC | No Limit | -430.40 | 0.00 | 0.00 | 0.00 | -430.40 |
| NOK001 | The Nook | No Limit | 1,479.20 | 945.20 | 534.00 | 0.00 | 0.00 |
| NUT001 | Nutrition & Culinary Commissary Kitchen | No Limit | 902.56 | 0.00 | 0.00 | 0.00 | 902.56 |
| PAR001 | Phillips Inv Co dba Park Tavern | No Limit | -247.48 | 0.00 | 0.00 | 0.00 | -247.48 |
| PFG001 | Performance Food Group | No Limit | 11,833.91 | 0.00 | 0.00 | 0.00 | 11,833.91 |
| PFG005 | Performance Food Group, Inc. | No Limit | 18,026.53 | 18,026.53 | 0.00 | 0.00 | 0.00 |
| POH001 | Pohl Food Service | No Limit | 53,713.34 | 53,480.34 | 233.00 | 0.00 | 0.00 |
| RAS001 | Rastellis | No Limit | 109,592.00 | 109,320.00 | 0.00 | 0.00 | 272.00 |
| REI001 | Reinhart Foodservice, LLC | No Limit | 24,563.22 | 24,563.22 | 0.00 | 0.00 | 0.00 |
| RFM001 | R&F Marketing | No Limit | 5,686.51 | 4,261.34 | 1,425.17 | 0.00 | 0.00 |
| ROY001 | Royal Foods Inc. | No Limit | 44,751.96 | 39,214.97 | 5,412.10 | 0.00 | 124.89 |
| SCC001 | St. Croix Casino | No Limit | -820.58 | 0.00 | 0.00 | 0.00 | -820.58 |
| SHN001 | Steakhouse Naturals, LLC | No Limit | 125.42 | 0.00 | 125.42 | 0.00 | 0.00 |
| SUN001 | Sunshine Factory | No Limit | 402.02 | 402.02 | 0.00 | 0.00 | 0.00 |
| SYS075 | Sysco Minnesota, Inc. | No Limit | 18,329.78 | 18,524.45 | -194.67 | 0.00 | 0.00 |
| SYS089 | Sysco Detroit | No Limit | 66,793.56 | 66,793.56 | 0.00 | 0.00 | 0.00 |
| TET001 | Teton Waters Ranch, LLC | No Limit | 16,644.00 | 16,644.00 | 0.00 | 0.00 | 0.00 |
| UIB001 | Upper Iowa Beef | No Limit | 200.40 | 200.40 | 0.00 | 0.00 | 0.00 |
| UPP001 | Upper Lakes Foods, Inc. | No Limit | 83,373.24 | 119,201.21 | -406.43 | 0.00 | -35,421.54 |
| UPP002 | Upper Lakes Foods, Inc. | No Limit | 116,460.86 | 58,535.64 | 0.00 | 0.00 | 57,925.22 |
| USF001 | US Foods - Minneapolis | No Limit | 33,996.77 | 33,996.71 | 0.02 | 0.00 | 0.04 |
| VIC001 | Art LLC dba Victoria Burrow | No Limit | 474.60 | 0.00 | 0.00 | 0.00 | 474.60 |
| WBL001 | White Bear Lake Lions Club | No Limit | 1,280.00 | 1,280.00 | 0.00 | 0.00 | 0.00 |
| WEL001 | Five Star Senior Living, Inc. | No Limit | 269.61 | 783.12 | 0.00 | 0.00 | -513.51 |
| | Total | | 1,360,700.18 | 1,223,408.42 | 61,814.37 | -6,832.28 | 82,309.67 |

Exhibit G

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| In Re: | Case No.:  19-32928-MER |
| Rancher's Legacy Meat Co., | Chapter 11 |
| Debtor. | |
| Rancher's Legacy Meat Co., as Debtor-in-Possession and the Official Committee of Unsecured Creditors of Rancher's Legacy Meat Co., | |
| Plaintiffs, | |
| vs. | Adversary No.:  19-3095-MER |
| James L. Ratcliff and Great Western Bank, | |
| Defendants. | |

**ORDER GRANTING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY
JUDGMENT REGARDING COUNT FOUR OF THE COMPLAINT**

This proceeding came before the Court on the Plaintiffs' Partial Motion for Summary Judgment Regarding Count Four of the Complaint (the "Motion"). Based on the Motion and the file and having determined that the relief requested is appropriate, accordingly,

**IT IS ORDERED:**

1.      The Plaintiffs'  Motion is **GRANTED**.

2.      On May 6, 2014, the Debtor changed its name from Unger Meat Company to Rancher's Legacy Meat Co (the "Name Change").

3.      As of that date, Ratcliff's UCC financing statements became seriously misleading pursuant to Minn. Stat. § 336.9-506.

4.      Pursuant to Minn. Stat. § 336.9-507, upon the expiration of the four month period following the Name Change, or September 6, 2014, Ratcliff's security interest became unperfected because Ratcliff did not file a UCC-3 reflecting the Name Change, thus rendering the 2010 UCC-1 and the 2011 UCC-3 "seriously misleading."

5.      In order to re-perfect his security interest, Ratcliff was required to file a new UCC-1 pursuant to Minn. Stat. § 336.9-310, but he failed to do so.

6.      The lien asserted by Defendant James L. Ratcliff is avoided pursuant to 11 U.S.C. § 544(a)(3) and is preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551.

Dated: _____, 2020

_____
Honorable Michael E. Ridgway
UNITED STATES BANKRUPTCY JUDGE

2